Good morning, Your Honor. Steve Kovachek, federal defense, on behalf of Mr. Munoz-Camarena. Your Honor, in Rassam just this week, the court said the district court did not appear to give any weight whatsoever to the guideline range, and therefore it found error. Here, on page 22 of the ER, the district court said the guidelines, quote, doesn't matter anyway. On page 23, he said, quote, would have absolutely no effect. On page 24, he said, quote, wouldn't make any difference at all. The district court here went far beyond the court in Rassam in making sure that everyone understood that the guideline range made absolutely no difference whatsoever. That alone, I think, is sufficient, regardless of how the Supreme Court resolves the plus-4 versus plus-8 issue that was raised below. It's sufficient to find that the explanation here was procedurally inadequate. You know, we're all, I think, in kind of a difficult position. Rassam has just come down. We don't know a mandate hasn't issued and whether there will be some changes in that opinion. So I think you need to argue it both ways. I will, Your Honor. But let me just say that there are some innovations in Rassam. Well, I'll just say this, that some refreshing thoughts have been expressed by the district court. And I'm not here to say the district court was totally crazy here. What I'm saying is the district court did not provide an adequate explanation. And if I just follow up briefly on Judge Fletcher's observation, there are some innovations in Rassam. I don't know what's going to happen with them. But what I'm talking about here, and it comes from page 19 of the Westlaw version of the opinion, the rule that the district court has to be cognizant of the guidelines throughout the procedure is not an innovation from Rassam. In fact, it quotes the Gall case from the Supreme Court and the Cardi case from this court. So that is a heartland notion of how sentencing is supposed to take place. In fact, the obligation to consider the guidelines is not only contained in Dahl and Cardi, but also in Section 3553A itself. And that's also grounded on the illegality of the guidelines, unconstitutionality of the guidelines. Absolutely. But the bottom line is that the Supreme Court says that we have to give the guidelines respectful consideration. That's not what happened here. The Merriweather case would seem to suggest that, yes, you can calculate the guidelines, you can be right or wrong, but if you factor 3553A factors properly explained, you can impose a sentence that's not unreasonable. So I don't know where we're going to go on this. Well, I don't think that what I'm advocating today is at all inconsistent with Merriweather, because I think the second part of your question, there's specifically a finding in Merriweather, which is easy for me to say, at page 634-35, that there was an adequate explanation in that case. And my position is that we don't need to look at Merriweather's analysis of whether or not you can have harmless error for guideline error. What we're talking about here is a failure to explain. I don't think he failed to explain. He looked at everything. He said he looked at everything. And he emphasized, but did not say he gave exclusive weight to deterrence. He was saying, I've got to demonstrate to this person the consequences of his acts. And a revolving door is not doing it. I mean, that's a pretty clear explanation, I think. It's clear it's just inadequate. Well, counsel, he tells us that he has some priors, three for simple possession, three for illegal entry, and that, in fact, he was removed eight times. And he says, I've got to give a sentence which is adequate deterrent, not more than that, but something that, in my view, is an adequate deterrent. Why isn't that an adequate explanation of what he did? It's not an adequate explanation for several reasons, the first of which is it doesn't give any credence to the guidelines analysis. As I quoted early on, the district court basically ignored that analysis. But the guidelines, in fact, have a very severe effect on recidivism, especially in the 1326 guidelines. Another one, this gentleman is in Category 6 of the criminal history category. I went back and I looked. He had two minor offenses that didn't score. He gets up to Category 6, I think, with 15 points. So he's really right in the heartland of Category 6. The Sentencing Commission already took into account recidivism in coming up with that guideline. The district court never acknowledged that the Sentencing Commission has its own views on recidivism and coming to some sort of conclusion saying that they're wrong. But it's not just the criminal history category. This guy also gets either plus 4 or plus 8 because of prior convictions. So that's a double whammy with respect to the criminal history. So he's really getting quite a bit of it. But even if you take all that into account and you still say that some incremental increase is necessary, the district court picked the 24-month number that he chose out of thin air. There is no explanation as to where that 24-month goes. And I know your honors have guidelines, but if you look across, this gentleman ended up in, I think it's Level 13. If you look across Level 13, the maximum sentence in each one of the criminal history categories goes up by three months, three months, six months, seven months, and then four months. Small, single-digit increments. This district court judge says, I'm going to quadruple that or triple that. And I'm going to say you get 24 more months instead of the three, four, or seven months that you might have gotten under a guideline analysis. And the guidelines themselves say that when you're talking about a criminal history upper departure, you should look to what the next category would be. And if you're in Category 6, you should look at the next hypothetical category. Well, the district court didn't do that. It didn't say it wasn't going to do that. And there were two specific objections in this record where the defense counsel said, your proposed 24-month increase is excessive. Another thing with respect to the 24-month increase is that let's say that the Supreme Court goes our way on the plus four versus plus eight. There's not one word of explanation as to why the maximum sentence of 30 months under the guidelines should be increased all the way up to 65. That's a 35-month increase. He never says why 35 months is an appropriate increase, but he does say on the record that I would give the same sentence either way. But he provides absolutely no explanation to where the 35-month number comes from. So the 24-month number comes from nowhere, and the 35-month figure comes further out of nowhere. So in both of those regards, the district court's explanation is not only insufficient in telling us where that number 24 comes from, but it's also insufficient for failure to explain why the guidelines got it so badly wrong when they were figuring out how you should increase the sentence. Now, one other thing that I'd like to point out with respect to Rassam is that, and this isn't in the brief, so I'm acknowledging it right off the bat, but in Rassam they assigned the case to a new district court judge. Your Honor should look at pages 23 to 24 of the sentencing transcript here, where the district court prejudged what he would do on a renown. He says, you know, it wouldn't make any difference at all. If you're right and I'm wrong, then you can't imagine if they sent this back to me and say it's a plus four that I'd do anything differently than what I'm contemplating here. Again, that is a more specific statement than this part relied upon in Rassam to decide that the case should be reassigned to a different district court judge. So I'd ask that Your Honors consider that aspect of Rassam as well. If I may, I'd like to reserve my time for rebuttal. Yes. Thank you, Your Honors. Thank you. Good morning. And please support Mark Leahy for the United States. Your Honors, to get right to Rassam, this case couldn't have been better explained. I think the defense counsel's characterizations of the record do not square with reality in this case. What was one of the biggest problems in Rassam? What did the Ninth Circuit say? It said that the district court, in a case of Rassam, of great complexity, only made passing reference to the guidelines two times, as well as making an initial calculation. Did only those things, even though it departed 45 years below the recommended sentence. If one of Rassam's mandates, which is true, it brings back from Cardi, is that the district court keep the guidelines in mind throughout the process, you can't move two or three pages in this transcript without seeing a reference to the guidelines. This district judge was eminently aware of the guidelines. In fact, he was defending himself the whole time against the guidelines. And the defense counsel below did a good job of making sure that the court did that, so this is not the kind of case that is presented in Rassam. I mean, I don't want to bore the court, but I want to have a few examples here. The start excerpt of record, page 11, at the very beginning. Looking at this record again, I will follow the calculations. I want to emphasize that with respect to the guidelines. ER 12, the next page. The recommendation here is 41 months again, which would be the same, meaning the same as the last sentence that he got. That may be what the guidelines produced, but it does not serve, in my judgment, any deterrence, because it doesn't demonstrate to Mr. Munoz the consequences of repeatedly coming back. And then I'd say, excerpt of record 12 through 20, a protracted discussion of the guidelines dispute here. It's hard for me to get a little frustrated with this case. I understand the defense has to do a job to advocate on behalf of the client. I'm Nathan Byst. I represent the government. If you look at what Judge Burns did here, I think it's phenomenal the amount of degree of attention he gave to the guidelines. The defense says he threw numbers up against the wall. He couldn't have cared less. Are you kidding me? From ER 12 to ER 20, he's asking questions back and forth. He's citing relevant case law, the case of Sepulveda Rios from the Fifth Circuit. Between the two of us, I was there at that sentencing. I wasn't the trial counsel in the case, but I was there to argue this guideline adjustment. The court spent a good five to eight minutes on that before he proceeded to 3553. So again, what is this showing? The judge is keeping the guidelines in mind. Then you shift to the 3553 discussion. Excerpt of Record 22, after defense counsel says, Cardi says you have to calculate the guidelines correctly, what does the judge say? I agree with you. Cardi requires me to do that. Even the page before, excerpt of Record 21, I understand I have to get the guidelines right. Now we start moving into the 3553 discussion. Again, what's the question? Is the court keeping these guidelines in mind throughout the process? Here's a quote at ER 23. I have already looked at the guidelines here, and my judgment is that the guidelines aren't adequate to account for the other factors that I think are appropriate. ER 25, I wanted to charge him for coming back, so the guidelines produce exactly the same sentence he got the last time. ER 26, you say, well, you really have to align with the guidelines. Frankly, I think the guideline calculations are out of line with what ought to be an experience and reason taken into consideration in this individual case. In my final example, the sentence is imposed in Excerpt of Record page 36. In Excerpt of Record page 35, right on the brink of imposing a sentence, what does the district court do? He references the guidelines again. Here's the quote. So where are we? We have a guideline-indicated sentence of 41 months. That doesn't serve any of the purposes of bringing this case or any sentence again. I think, again, that it's necessary to incrementally increase the sentence. Your Honor, again, I apologize for the lawyers. Counsel, part of what opposing counsel has argued is that even assuming everything you've said is correct, that the 24 months is excessive and is insufficiently explained as distinct from, say, adding six months or four months or some other number of months. What's your response to that specific argument? That's the next page that I marked here. I mean, this court, again, he wasn't just mentioning the word guidelines as a magic talisman. He says repeatedly it's about deterrence. Defense counsel, I'm not aware of any law that says that a 3553 variance somehow has to be tethered to these plus three months, plus six months. There's nothing that says that the court has to do that. But even more importantly, and this is something that the defense has failed to do this entire case, they want you to be so concerned about these two simple possession convictions and whether they're an aggravated felony. This defendant had this was his fourth felony immigration offense. What were the sentences of the first three? As the district judge said, they were kind of crazy quilted. I think that's a direct quote. The first one, the defendant got 30 months. That was in 1998. Comes back almost immediately. In 2001, he goes down to 24 months. After serving that, he comes back immediately. In 2005, the last sentence was 41 months. Forty-one months is what the government recommended in this case, the trial counsel. Does it make any sense on that record to go to 44 or to 46? No. If the judge wants to send a message of deterrence, which is what the judge said repeatedly, it's entirely reasonable for him to take that number. In fact, if you look back from a 24-month sentence, even when he went up to 41 months for the third one, that is far more than a three or a four or a five-month increment. I mean, what the judge was saying is, look, this guy isn't getting the picture. And I'm not aware of anyone under 3553, the whole point is supposed to be discretion. And it also bears noting that this district court, since he had this defendant on supervised release, had sentenced him before. He had a history with this defendant. And not only did he have the three prior convictions, he has eight prior removals. So that means he was getting a break before he didn't have a prosecution. What does this judge want to do to send a message of deterrence? And that goes to your question about adequate explanation. The judge references this deterrence. Excerpt of record 11. Excerpt of record 12. Page 23. Page 25. And he says, this doesn't strike me as appropriate in this case, given the whole purpose of the prosecution for a status offense like this, is a guy with a bad record coming in is to deter him. Now, I don't know how much more a district court has to say. I think, frankly, the defense's issue isn't so much that this wasn't explained adequately, but that simply the result isn't the one that they wanted. If the defense counsel throughout the hearing said, no, it's too much, it's too much, they had the back and forth that Glicker wants. They had that individual call to me. That's why I said, and I did not mean it as hyperbole in my brief, I think this record is actually a textbook example. And even there's other points. This district court, this was not something that he threw out at the defense as a total sandbag. This court's aware that this pre-court decision was decided, and there is already for us district courts under no obligation to give notice to impose a variance. And yet this district court said, right at the beginning of the excerpt of record, either 11 or 12, I'm not required to give you this notice, but let me tell you, my intent is to vary. And he repeats this throughout, and you see these nice colloquial phrases. If you can persuade me otherwise, I'm all ears. I'm not telling you this to argue with you, but just to explain what I'm thinking. This is textbook, the 3553 quads. And to bring it back to Rassam, therefore, in Rassam, you have two passing references to the guidelines. Here you have every three pages plus a protracted discussion of the one guidelines dispute. In Rassam, you don't have any explanation for the deviation from the guideline range. Here, this district court is continually referring to it, and for the reasons of deterrence. Another problem that this court noted in Rassam was that the defense presented non-frivolous specific arguments that the district court never addressed. For example, Rassam was about the Millennium Bomber. One of the government's arguments was, well, if you only give him 22 years, he'll only be 53 when he gets out. He'll still be dangerous. Absolute silence in the record from the district court. To this date, there has been not one claim by the defense that one of their non-frivolous arguments was not addressed by the court. Maybe they didn't like the result, but they can't say it wasn't addressed. Now, they may quibble with whether the 3553 factors were all addressed, but as we pointed out in our brief, the district court didn't just talk about deterrence. He talked about these other factors. But Gutierrez-Sanchez is the district court discretionary with some factors more weight than others. That's consistent with the law of other circuits. That is what happened here, Your Honor. So I see I'm almost out of time, but again, I don't mean this as any hyperbole. This is the kind of record that one would hope to get for appellate review. And unless the panel has any further questions, we will submit. Thank you. If I could follow up on Judge Graber's question. I still didn't hear any explanation as to where that number 24 comes from. And I'm not here today to argue to you that this judge could not give this guy more than 41 months. What I'm here to do today is to say that there is no explanation as to where that 24 number comes from. There still is no explanation. And Mr. Rady didn't even attempt to explain where the 35 number would come from should we win on the plus-4 versus plus-8 issue in Supreme Court. Didn't he say he imposed that for deterrence? Absolutely. Again, I'm not here to dispute that deterrence was his primary motivation. I think his sole motivation. But anyway, I'm not disputing that either. But what the commentators say is that when you think that you need some more deterrence, that criminal history category 6, where this guy squarely fit, is not enough, then you look to the next category up, the next hypothetical category up, which would be an increase in single digits in months, not two years. And I'm not here to say that the district court is in any way obligated to choose that sentence. He can say, I've thought that through, and for whatever reason, I choose not to follow it. I mean, I think that's what the Supreme Court has told us with respect to the crack guidelines. So what did he say here? He just said 24 months is reasonable. But it's your job to find out whether or not it's reasonable. It's not his job. He needs to pick and explain why he picked it, and he did not explain it, and the government hasn't offered an explanation as to where that number comes from. There's also the parsimony provision, the first lines of Section 3553A that say that the sentence needs to be sufficient but not greater than necessary to achieve these goals. He never said once that this was a sufficient but not greater than necessary sentence. And you have to wonder, if the Sentencing Commission thinks that a single-digit enhancement is sufficient but not greater than necessary, then there ought to be – Well, look, you have a system where we're told that the sentencing guidelines are unconstitutional, but take a look at them anyway. And if you depart up or down, you go through the 3553 factors. Absolutely. He did it here. But the explanation still has to be there for the reasons why he deviates and for the extent of the deviation. The greater the deviation, the greater the requirement of explanation.  Well, he said that it was for deterrence. Now, you want him to say, well, 34 months, that's not enough deterrence. But 35 months, that's just about right. He's just exercising his judgment, his discretion. Yeah, I'm not here to say he didn't. He was being shot, but he didn't explain it. That's my statement. Well, I think you told us that several times. Thank you, Your Honor. Okay. Next, we have...
judges: Fletcher B. , Pregerson, Graber